RECEIVED

FEB 05 2019

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

Samuel Zean, Eunice Zean,

        Plaintiffs,

v.

Choice Hotels International, Inc.,

        Defendant.

COMPLAINT
(JURY TRIAL DEMANDED)

Court File No. _19 CV 259 JNE/HB_

PLAINTIFFS, as and for their causes of action against the above-named Defendant, state and

allege as follows:

**INTRODUCTION**

1.    Plaintiffs Samuel Zean and Eunice Zean are African immigrants, naturalized United

Stated citizens and residents of Brooklyn Park, Minnesota. Mr. and Mrs. Zean bring this

action to seek redress for injuries that they suffered because of Defendant's defamatory

conduct, racially retaliatory conduct, racial harassment and racially discriminatory conduct

of public accommodations and the right to contract.

2.    Quality Inn & Suites ("the Quality Inn") offers public accommodations at a hotel

in Eagan, Minnesota. On July 31, 2017, Defendant Choice Hotel International LLC.

("CHI") furnished and published a false, defamatory and malicious statement to the

Quality Inn, alleging that Plaintiffs Samuel Zean and Eunice Zean both being husband

and wife, "took all the pillow cases and towels" from room 168 of the Quality Inn &

Suites hotel in Eagan, Minnesota. Relying on the false and malicious information,

1

SCANNED

FEB 05 2019

U.S. DISTRICT COURT MPLS

published by CHI, the Quality Inn and its employees targeted and singled out Mr. and Mrs. Zean and denied them the use and/or enjoyment of the benefits, privileges, terms and conditions that they extend to all other similarly situated guests and invitees.

3.      Specifically, the Quality Inn explicitly relied on the false information that CHI furnished to it and so slandered Mr. and Mrs. Zean and breached its contract with Mr. and Mrs. Zean and discriminated against them in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981(a), and specifically section (b) which provides, "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and *termination of contracts*, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

## STATEMENT OF JURISDICTION & VENUE

4.      The Court has primary jurisdiction over Plaintiffs' federal claim pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332 and § 1343(a)(4). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. 4.

5.      Venue is proper in this District of Minnesota, pursuant to 28 U.S.C. § 1391 because the events giving rise to these claims occurred in this District.

## PARTIES

6.      Plaintiff Samuel Zean is an African-immigrant man, husband of Plaintiff Eunice Zean and a United States citizen who resides in Brooklyn Park, Minnesota.

7.      Plaintiff Eunice Zean is an African-immigrant woman, wife of Plaintiff Samuel Zean, and a United States citizen who resides in Brooklyn Park, Minnesota.

8.      Defendant Choice Hotels International, Inc. ("CHI") is a corporation organized

under the laws of the State of Delaware.

9.     Quality Inn & Suites, (the Quality Inn) is a franchisee of Choice Hotels International, Inc., headquarters in Greenbelt, Maryland.

10.     Plaintiffs are informed and believes, and thereon allege that CHI has on the record, disclaimed any liabilities arising from the exclusive conducts of its franchisees. Specifically, CHI has alleged it has a long-established policy wherein it overtly ***disclaims*** all liabilities arising from the conducts of its franchisees.

11.     Quality Inn & Suites, ("the Quality Inn") is a Maryland limited liability corporation and is ***not*** a defendant in this present lawsuit. Plaintiffs are informed and believes, and thereon alleges Upon information and belief, the Quality Inn owns, manages, operates, and does business as Quality Inn & Suites, in Eagan, Minnesota.

12.     Plaintiffs imitated a lawsuit against the Quality Inn and its general manager, Mr. Mark Revering for defamation on October 30, 2017. That lawsuit is currently undecided and ongoing in the Fourth Judicial District Court of Hennepin County, Minnesota.

13.     Plaintiffs were unaware of CHI's involvement in the furnishing and publication of defamatory materials to the Quality Inn at the time that they initiated their lawsuit against the Quality Inn on October 30, 2017. As such, Plaintiffs did not include CHI as a defendant in Case No. 27-CV-17-16520 because Plaintiffs had no compelling reason to include CHI as a defendant in that matter, especially, in view of the fact, that CHI's policy overtly disclaimed any liability that arises from the exclusive conducts of its franchisees.

14.     However, about seven to nine months later in May 2018 and July 2018, after the case was filed, during discovery and disposition, Quality Inn introduced two documents

3

(Choice Hotel Change Activity List, DEF 003 and form DEF 004) as evidence against Samuel Zean and Eunice Zean in that proceeding. Upon their review of the documents, it became quite apparent that CHI is both responsible and totally liable for the conducts of the Quality Inn and its employees because the newly discovered internal documents of CHI revealed that the Quality Inn and its employees unequivocally relied on the information in both documents in exhibiting the discriminatory and defamatory conducts against Mr. and Mrs. Zean. For this reason and based on the date of Plaintiffs' discovery of CHI's involvement in the conducts that were unleashed by the Quality Inn and its employees against Plaintiffs on July 31, 2017, August 1, 2017 and August 2, 2017, Plaintiffs have now appropriately initiated this action against CHI for the conducts and actions which it created, aid and abided, caused, approved and ratified for the Quality Inn and its employees to perform.

## FACTUAL ALLEGATIONS

15.    On Monday July 31, 2017, Plaintiffs checked into Quality Inn & Suites Hotel in Eagan, Minnesota at 7:37 p.m.

16.    At check in on July 31, 2017, before any room was assigned to Plaintiffs, their booking "room rate" was upgraded to a room with a Jacuzzi tub.

17.    Minutes later, the unpleasant odor and untidy condition of the hotel compelled Plaintiffs to *"cancel their contract"* and checked out within only 20 minutes of checking in.

18.    Defendant CHI and its brand the Quality Inn promises the following regarding the cancellation of contract:

4

a) 24 Hour Cancellation Policy; cancel 24 hours prior to arrival with no penalty.
b) Pay at the end of your stay. A credit card guarantees your reservation but you don't pay until you check out.
c) No extra service charges, mystery fees, or surprise payments ever!
d) No early checkout fees, as long as you enjoy your stay, if you leave early, we won't penalize you.
e) No resort or hidden fees! We won't charge you for services you didn't use at our hotel.
f) Direct booking... Easy Cancellation. Cancel easily on-line or with a simple phone call.

19.     A refund of $286.30 was put back on Plaintiffs' debit card on July 31, 2017, by the Quality Inn, and Plaintiffs left the hotel's premises.

20.     The next day, Plaintiffs realized that immediately after they checked out, the Quality Inn levied $143.15 from their bank account without any legitimate reason and without any authorization.

21.     Additionally, on that same day, Plaintiffs realized that the Quality Inn again repeatedly levied $7.13 and $100 from their bank account.

22.     Plaintiffs requested a refund from a female hotel staff on August 1, 2017 for the unauthorized amounts of $143.15, $7.13 and $100.

**The defamatory statements and publication of CHI and its franchisee, the Quality Inn and its employees.**

23.     To Plaintiffs' greatest surprise they were falsely and maliciously slandered of the crime of theft by the female employee of the Quality Inn in the presence of their two sons.

24.     Plaintiffs were falsely accused of stealing all towels and pillows from the hotel's room when they checked out.

25.     Plaintiffs were shocked, surprised, humiliated and embarrassed in the presence of their boys who they trained and study the Bible with daily because they teach them lessons

5

on lying and stealing but were themselves being accused of such offenses or crimes in their presence.

26.    On August 1, 2017, the receptionist refused to refund Mr. and Mrs. Zean and asked them to speak with the general manager of the Quality Inn the next day, August 2, 2017.

27.    The receptionist informed Plaintiffs that they had stolen the items—specifically towels and pillars from room 168 based on the logged *"memo"* in the hotel's computer log.

28.    Mr. and Mrs. Zean spoke with the Quality Inn general manager Mr. Mark Revering the next day on August 2, 2017.

29.    In reliance on the statement in the published *"memo,"* in the Quality Inn computer log, Mr. Revering slandered Plaintiffs in the presence   of their children.

30.    Plaintiffs filed a lawsuit against the Quality Inn and its general manager Mr. Mark Revering on October 30, 2017, in the Fourth Judicial District Court.

31.    In that case, both defendants the Quality Inn and its general manager Mr. Mark Revering collectively *confessed* on the merit in sworn affidavit on the record that Mr. Mark Revering slandered Mr. and Mrs. Zean when he said, *"Yep, uh so when you checked into the room and left out, you guys took some uhm pillows cases and the towels and stuff out of the room."*

32.    Further, both defendants collectively **confessed** on the merit in sworn affidavit on the record that the hotel general manager Mr. Mark Revering slandered Mr. and Mrs. Zean when he said, *"I pray you don't do that to nobody else."*

33.    Further, both defendants collectively **confessed** on the merit in sworn affidavit on the record that the hotel general manager Mr. Mark Revering slandered Mr. and Mrs.

6

Zean when he told them, *"I know you've stayed at other hotels and they clearly say "please don't take the stuff out of there. If you do, you're going to get charged for it."*

34.     Additionally, both defendants collectively **confessed** on the merit in sworn affidavit on the record that the hotel general manager Mr. Mark Revering further slandered Mr. and Mrs. Zean when he said, *"People steal stuff like that all the time out of our rooms."*

35.     Additionally, both defendants also collectively **confessed** on the merit in sworn affidavit on the record that the hotel general manager Mr. Mark Revering further slandered Mr. and Mrs. Zean when he said, *"Please be careful next time."*

36.     Plaintiffs' children were present, listened, and heard the entire conversation between their parents and the hotel general manager from start to end, when Mr. Revering repeatedly slandered their parents during that discussion.

37.     Slander involves the oral "publication" of a defamatory remark that is heard by another, which injures the subject's reputation or character.

**Evidence establishing that CHI' form Def 003 Was a work of aggregated forgery and forgery (fraud) under Minnesota Law.**

38.     In May 2018, about seven months after the commencement of said lawsuit against the Quality Inn and its general manager, Mr. Revering, both defendants collectively introduced as evidence in that lawsuit a document called CHI Change Activity List or a form called DEF 003, that revealed a false and maliciously unprivileged publication containing a defamatory communication to the unprivileged employees of the Quality Inn that alleges Mr. and Mrs. Zean *"took all the pillow cases and towels"* from room 168.

39.     The false and maliciously defamatory information on form DEF 003 is allegedly
generated by CHI, after Plaintiffs upgraded their room with CHI on July 31, 2017.

40.     Other implicating information were allegedly forged on form DEF 003 by the
Quality Inn and its employees on May 7, 2018 and then introduced as evidence in case No.
27-CV-17-16520.

41.     CHI' form DEF 003, alleges that Mr. and Mrs. Zean originally booked their hotel
room at the Quality Inn *at 1:27 p.m.* on 07/30/2017. But contrary to DEF 003, Plaintiffs
booked their room not at 1:27 p.m. but *at 7:27 p.m.* on 07/30/2017.

42.     Quality Inn further alleged that "after Plaintiffs left, Quality Inn housekeeping went
in to clean Room 168 at 10:28 PM and discovered that all pillows, pillowcases, towels,
washcloths, hand towels and bath mats were missing."

43.     However, all the activities that were logged by CHI on its form DEF 003, regarding
*both* room 118 and room 168 on July 31, 2017, were not Plaintiffs' check in or check out
activities based on the Quality Inn invoice that was given to Mr. and Mrs. Zean at check
out on July 31, 2017.

44.     The Quality Inn invoice manifestly established and revealed fact that Plaintiffs were
not at the hotel at **6:37 PM** as CHI form DEF 003 falsely alleged.

45.     · On the contrary, the invoice that was given to Mr. and Mrs. Zean on July 31, 2017,
by the Quality Inn both establishes and confirms Mr. and Mrs. Zean's check in time to be
*7:37 p.m.* not 6:37 p.m. It also establishes and confirms their check out time to be *7:57
p.m.* and not 6:57 p.m.

46.     Plaintiffs allege that all the recorded times and activities on CHI' form

8

DEF 003, regarding both room 118 and room 168 on July 31, 2017 occurred when Mr. and

Mrs. Zean had not yet checked in at the Quality Inn, according to the fact and evidence on

the hotel's original invoice.

47.     Plaintiffs allege that nowhere on CHI' form DEF 003, is any fact in the timestamps

of the recorded activities, that Plaintiffs utilized their keys in rooms 118 or 168 at any time

during their 20 minutes (7:37 p.m. to 7:57 p.m.) at the hotel on July 31, 2017.

48.     Significantly, all the rates of rooms 118 and 168 that are indicated on CHI' form

DEF 003 are not the same rates that Mr. and Mrs. Zean, were charged or paid when they

booked or upgraded their room during check in at the Quality Inn.

**The evolution of Defendant CHI and its franchisee, the Quality Inn conduct of deceptions.**

49.     Initially, the Quality Inn alleged as follows:

> "Staff went into the ***first room*** rented to Plaintiffs to ensure it was clean and available for re-renting. Hotel ***staff noticed*** that all pillows, pillows cases, towers, wash cloths, hand towers and bath mat ***were missing***. Accordingly, Defendant Mark Revering, the General Manger of the Quality Inn & Suites, ***charged Plaintiffs account for these missing items***;" as no one else had been in the room other than Plaintiff."

50.     The Quality Inn mentioned of a first room was in reference to room 118. But it is

plausible that Caucasian had checked in room 118 prior to Plaintiffs vising the hotel on

July 31, 2017.

51.     Plaintiffs were observed to be the only black—specifically, Plaintiffs were observed

to be the only Africans at the Quality Inn hotel in Eagan, Minnesota on July 31, 2017, of

the tons of hotel's guests who were primarily other races that were spotted in the halls,

lobby areas, pool, kitchen or dining room.

52.    After Plaintiffs offered evidence, that showed they did not enter room 118, the

Quality Inn shifted position like the wind and alleged the items was stolen from a different

room—room 168 by alleging as follows:

> "Plaintiffs rented a standard room from Quality Inn and were given **Room 118** at 6:37 PM and after Plaintiffs went down to the room, they returned to the front desk and indicated they didn't want the standard room but wanted a room with a Jacuzzi. Plaintiffs were then given a room with a Jacuzzi, **Room 168**, and utilized their card to check into the room at 6:43PM. At 6:57 PM, Plaintiffs indicated they were unhappy with that room and a full refund of their fees was given."

53.    The evidence is clear that Plaintiffs were racially targeted, singled out, profiled and

treated unfairly. Unlawful harassment can occur without economic injury to the victim.

The victim does not have to be the person harassed, but can be anyone affected by the

offensive conduct. Plaintiffs two sons were greatly also affected by the offensive conducts.

**Evidence establishing that CHI' form Def 004 Was a work of aggregated forgery and forgery (fraud) under Minnesota Law.**

54.    In July 2018, the Quality Inn introduced another forged document into evidence

against Mr. and Mrs. Zean, which is called Quality Inn & Suites Guests' Reservation

Agreement Form or form DEF 004, generated and produced by CHI.

55.    But upon review of CHI' form DEF 004, Mr. and Mrs. Zean observed the document

was also forged by Choice Hotel.

56.    The Quality Inn knowingly and falsely represented that CHI' form DEF 004  was

given Mr. and Mrs. Zean at check in on July 31, 2017, as follows:

> "The Zeans were provided a standard check-in per the attached document marked DEF 004 which is standard. It includes things such as responsibility for $300 if they are smoking in a non- smoking area, pet damage and other things and specifically provides "I am financially responsible for all damage

10

to the hotel property caused by myself or any person occupying my guest room. All charges are personal indebtedness. If payment is by credit card, you are authorized to charge my account for the total amount due."

57. But this claim is false. The fact shown on CHI' form DEF 004 established the act of aggregated forgery because the events that are indicated on the form was put on the form after July 31, 2017, for the specific purpose to frame Mr. and Mrs. Zean.

58. Neither Mr. Zean nor Mrs. Zean's signature appears on the form. Besides, the event that happened after Mr. and Mrs. Zean, checked-in at the Quality Inn on July 31, 2017, (about the hotel's untidiness and unpleasant odor) that compelled them to abruptly check out 20 minutes later after check-in, could not have been known for a form that was supposedly given to them at check in to have reflected their check out date to be July 31, 2017 instead of August 2, 2017.

59. Notwithstanding, CHI' form DEF 004 shows their checked out date to be July 31, 2017 although an unforeseen event compelled them to check out only 20 minutes after check in.

60. Because the Quality Inn alleged that form DEF 004 was given to Mr. and Mrs. Zean at check in on July 31, 2017, only their original check out date of August 2, 2017 was known at check in and should have reflected on the form had it truly been given them.

61. It is implausible, even impossible that an unanticipated check out date of July 31, 2017, would have been known in advance so as to appear on a form that was allegedly given to Plaintiffs during check-in.

62. Additionally, Choice Hotel's form DEF 004 misleadingly shows room 168 rate to be $129.99 although Plaintiffs' room rate was *not* $129.99 *but* $193.00, plus taxes and fees

of $19.54, totaling $212.54 for Mr. and Mrs. Zean's projected two days stay on July 31, 2017 to August 2, 2017.

63.     After Plaintiffs upgraded, they were assigned room 168 with a new room rate of $266.75, plus taxes and fees of $19.54 totaling $286.30. $129.99 don't come close.

64.     Plaintiffs allege that as willful, malicious, and outrageous as these conducts were, the Quality Inn accepted full responsibility of the conduct by alleging, "Consequently, "…Defendants' were acting in their jobs at the hotel…" "…the hotel and its employees were performing their jobs…"

65.     The Quality Inn in essence acknowledged it did not only approved and ratified the conducts of its employees on July 31 through August 2, 2017, but that its employees were acting in and performing their official employment capacities and the Quality Inn was in it together with its employees.

66.     On November 21, 2018, the Quality Inn again confessed on the merit on the record that, *"Defendant decided to refund the $107 fine for the <u>stolen items</u>, signifying that he <u>does not believe</u> that Plaintiffs <u>stole the items</u>."*

67.     This is the proverbial "smoking gun" evidence that on its face shows Mr. and Mrs. Zean were targeted, singled out and wrongfully framed on July 31, 2017 by CHI, the Quality Inn and its employees.

68.     If there was any confusion in this matter—the above confession by the Quality Inn finally put to rest any confusion that CHI and its franchisee the Quality Inn and its employees' conduct were a targeted discrimination and defamation that was perpetrated in in bad faith, ill will, with malice, and for an improper motive.

12

69.    The Quality Inn confession above is evidence in itself establishing negligent disregard and willful indifference to the rights of Mr. and Mrs. Zean not to be falsely and maliciously defamed.

70.    The Quality Inn in essence, confessed that the hotel originally charged Mr. and Mrs. Zean $107 fine for the "stolen items," although neither Mr. Revering nor the Quality Inn ever believed that Mr. and Mrs. Zean stole any items from the hotel as CHI has originally alleged and that no items were ever missing on July 31, 2017 to begin with.

71.    Quality Inn further assert that, Mr. and Mrs. Zean "*have no evidence to dispute items were missing from the room after they entered the room...There was no allegations of a crime or reports to the police.*"

72.    Quality Inn assertion above provides further evidence that Mr. and Mrs. Zean's Quality Inn assertion above provides further evidence that Mr. and Mrs. Zean's funds were wrongfully levied, they were wrongfully framed and defamed. Indeed, Mr. and Mrs. Zean were singled out and unlawfully targeted because of their race and national origin.

73.    The slanderous and libelous malicious allegations that were personally directly at Mr. and Mrs. Zean, were knowingly fabricated and false.

**The Quality Inn and its general manager Mark Revering's Discriminatory actions and racially charged/motivated statement**

74.    The Minnesota Human Rights Act prohibits discrimination in public accommodations on the basis of race, color, creed, religion, national origin, and marital status.

75.    The Minnesota Human Rights Act prohibits discrimination in public establishment

on the basis of race, color, creed, religion, national origin, and marital status.

76.     Equal access to public accommodations or establishment is a key part of shared public life and ensuring that no discrimination is an issue of broad societal concern.

77.     Minnesota discrimination law forbids the owner or operator of a place of public accommodation, or his agent or employee, from denying to any person on account of race any of the accommodations, advantages, facilities, or privileges available at their place of public accommodation.

78.     CHI and its franchisee, the Quality Inn hotel in Eagan, Minnesota, is a place of public accommodation because it provides lodging to transient guests and Mr. and Mrs. Zean, met the standards for occupancy and had a contract with the Quality Inn for accommodations that included their rights to accommodations, advantages, facilities, or available privileges.

79.     CHI and its franchisee, the Quality Inn libeled, slandered, and wrongfully levied funds from its black guests' Mr. and Mrs. Zean's bank account just because they canceled their room on July 31, 2017. Specifically, CHI and its franchisee, the Quality Inn acknowledged on the record they have not levied the funds of their hotel's guests of other races' account or retaliated against guests of other races.

80.     Also pursuant to a racially discriminatory policy, the Quality Inn, or its employees do not and have never informed guests of other races, *"I know you've stayed at other hotels and they clearly say "please don't take the stuff out of there. If you do, you're going to get charged for it."*

81.    CHI and its franchisee, the Quality Inn assert that Mr. Revering's statement about Mr. and Mrs. Zean above "is true account of how Mr. Revering believes other hotels try to prevent damage to their hotels. But in so doing, the Quality Inn and its general manager unequivocally admitted that they maliciously defamed Plaintiffs and issued discriminatory statements to them.

82.    This attitude by Quality Inn and its employees demonstrate their willful indifference and intentional disregard for the rights of Mr. and Mrs. Zean not to be falsely and spitefully defamed in the presence of their children and discriminated against.

83.    The statement was intentionally and personally directed at Mr. and Mrs. Zean, was racially motivated and implies that because they are black, from Africa and speak in foreign accents, other hotels' managements tell them not to steal stuffs from their hotels and if they did, they will get charged for it. This is the definition of bigotry, bigotry or racism.

84.    Because Mr. and Mrs. Zean are from Africa, are black and have accent, CHI and its franchisee, the Quality Inn targeted and singled them out the moment that they complained about the hotel's untidy condition and unpleasant odor and—thus, forced them to prove their rights not to be singled out, not to have their funds knowingly and wrongfully levied from their bank account, not to knowingly be framed and accused of the crime of theft and discriminated against while guests of other races were not similarly treated.

85.    Upon information and belief, Plaintiffs allege that multiple other guests specifically, at the Quality Inn hotel in Eagan, Minnesota, who are white (Caucasian) publically posted complains about the hotel's untidy condition and unpleasant odor during and after check

out, similarly as Mr. and Mrs. Zean had complained and were not singled out, were not defamed or retaliated against nor were they harassed.

86.     Upon information and belief, Plaintiffs allege the Quality Inn general manager, Mr. Mark Revering, who had authorized the levied of the Zeans' funds from their bank account, who had personally slandered Mr. and Mrs. Zean, racially harassed and discriminated against them, treated similarly situated white guests quite differently and favorably by offering white guests, public apologies and commendations for their negative public comments regarding their experiences at the hotel.

87.     The Civil Rights Act of 1964 is federal civil rights legislation that prohibits discrimination in numerous settings, including public accommodations. Specifically, Title II prohibits discrimination on the basis of race, color, religion, or national origin in places of public accommodations and provides injunctive relief for such violations.

88.     In the context of Title II, SEC. 201 (a), (b)1, (4)(A)(i)(ii)(B), (c)(d)(e), Plaintiffs were entitled to the full and equal privileges, advantages, and accommodations by the Quality Inn… without discrimination or harassment on the ground of their race, color, or national origin.

89.     But Plaintiffs were discriminated against when they were targeted, singled out, and unjustly harassed by the treatment of invasion into their bank account, experienced racially motive and charged comments of bigotry, unjustly framed of a crime of theft they didn't commit and were defamed.

90.     In the context of Title II, SEC. 202, Plaintiffs were entitled to be free from discrimination or the harassment of unwarranted treatment of any kind on the ground of

their race, color, or national origin. Yet, CHI and its franchisee, the Quality Inn unlawfully and unjustifiably subjected Plaintiffs the treatment as alleged in this Complaint.

91.     In the context of Title II, SEC. 203, although black, Plaintiffs were exclusively entitled and had full right to their funds in their bank account and had the right to exercise full control over their funds in their bank account.

92.     Nevertheless, CHI and its franchisee, the Quality Inn knowingly, excessively levied and withheld Plaintiffs' funds in their bank account for days although unwarranted and unauthorized.

93.     In so doing, CHI and its franchisee, the Quality Inn undeservedly denied and deprived Mr. and Mrs. Zean of their rights to their funds, to be free from the unwarranted treatment of harassment, malicious defamation and discrimination in the presence of their children.

94.     CHI and its franchisee, the Quality Inn attempted to intimidate and threaten Plaintiffs and actually punished Plaintiffs by knowingly accusing them of the crime of theft that carries with it civil and criminal liabilities and jail time with the purpose of interfering with their rights because they attempted to exercise their rights secured by section 201 or 202.

95.     In the context of Title II, SEC. 204 (a), there are reasonable grounds to believe that the CHI and its franchisee, the Quality Inn engaged in acts or practices prohibited by section 203.

96.     As a result of the CHI and its franchisee, the Quality Inn actions and conducts, Plaintiffs' pursuit of happiness or fundamental right mentioned in the Declaration of

Independence to freely pursue joy and live life in a way that makes them happy was clearly violated when their 13th anniversary was abruptly ruined on July 31, 2017 through August 2, 2017.

97.     Each individual are granted right to equality irrespective of their language or color.

98.     Here, Mr. and Mrs. Zean's rights were violated by the Quality Inn and its employees' racially motivated treatment since no other races were subjected to a similar treatment by the Quality Inn and its employees on July 31, 2017 through August 2, 2017.

99.     Each individual are granted the right to personal freedom that is essential for the growth of the individual irrespective of language or color.

100.    Mr. and Mrs. Zean's rights to personal freedom to check out of the Quality Inn even 20 minutes after they had checked in without retaliation was violated because the hotel and its employees were angry and retaliated against them because of their race and the color of their skin.

101.    Thus, CHI and its franchisee, the Quality Inn denied Mr. and Mrs. Zean an equal enjoyment of all of the hotel's accommodations, advantages, facilities, or privileges that were available to hotel guests of other races and provided services to Mr. and Mrs. Zean in a hostile, unreasonable, and discriminatory manner on account of their race.

**Additional conduct establishing CHI, its franchisee, the Quality Inn and its employees' discriminatory conducts and treatment of Mr. and Mrs. Zean.**

102.    Although the Quality Inn and its general manager confessed that they later refunded Plaintiffs because they didn't believe they stole any items from the hotel on July 31, 2017, and additionally, assert that in essence, they cannot prove any item was ever missing from

the hotel, the Quality Inn and its staff nevertheless confessed, they made multiple additional discriminatory comments to Plaintiffs as follows:

1) "I'm hoping that it wasn't you guys. That's what I'm saying. I hope that it wasn't you."
2) Uhm, I'll go ahead, I'm going to refund this back to you, but I really hope you didn't do this."
3) "Please be careful next time. And hopefully it wasn't you."
4) "I hope that it wasn't you."
5) "I pray you don't do that to nobody else."
6) "No, my housekeepers don't steal. We have $3,000 rings that people leave, and they don't take those. They turn them in for people to come back and get them. They are not going to take that stuff."
7) "I apologize, I am not trying to be offensive. I am trying to protect my hotel and my assets of my hotel."

103.   CHI and its franchisee, the Quality Inn also used racial harassment against Mr. and Mrs. Zean when they repeatedly used discriminatory remarks, behaviors or practices to show racial intolerance against the Zeans.

104.   Specifically, the Quality Inn confessed that it and its employees engaged in the following conducts to Mr. and Mrs. Zean:

a) They made insinuations, humiliating comments or racially oriented remarks against the Zeans.
b) They criticized and were intolerant regarding Mr. and Mrs. Zean's differences:
c) They acted seemingly disgusted or showed contempt in the Zeans' presence.
d) They found excuses for accusing and blaming Mr. and Mrs. Zean for something that was clearly a sham, which the Quality Inn later confessed did not happen.
e) They stereotyped Mr. and Mrs. Zean with subordinate comments.
f) They threatened and intimidated Mr. and Mrs. Zean by alleging they committed a crime of theft.
g) They confessed that Mr. and Mrs. Zean being the victims of racial harassment and discrimination felt very hurt, outraged and humiliated. (i.e. 1. Mr. Revering confessed to saying, "Because I'm on the other line, I am on this side listening to you guys yell and scream;" 2. And Mr. Zean responded, "No. We are yelling because you are being offensive. It's very offensive;" 3, Mr. Revering responded, "I apologize, I am not trying to be offensive. I am trying to protect my hotel and my assets of my hotel;" 4. Mr. Zean responded "Yeah but you accused us, you

19

said we shouldn't do that to anybody else....But, what I don't appreciate is that you say to me and my wife that you wish we don't do that to anybody else;" and 5. Mrs. Zean responded "very offensive."

105.    Any reasonable person will readily conclude that Defendant and its franchisee unreasonably subjected Mr. and Mr. Zean to an excessively discriminatory treatment.

106.    In the context of Title II, SEC. 202 provides that Mr. and Mrs. Zean are entitled to be free, at any establishment or place, from discrimination or harassment of any kind on the ground of race, color or national origin, but were subjected to racial harassment and discrimination when they were bothered, threatened and treated unfairly because of their perceived race, colour and ethnic origin.

107.    *Indeed,* CHI and its franchisee, the Quality Inn and its employees conducts, and behaviors was unwelcomed and very offensive, intimidating and hostile.

108.    CHI' and its franchisee, the Quality Inn and its employees' behaviors were severe and pervasive and has since been very traumatizing to Mr. and Mrs. Zean as a result.

109.    The evidence is quite clear that Mr. and Mrs. Zean were targeted and single out with knowingly false accusations and racially charged discriminatory remarks and harassment based on the commentaries above.

110.    Plaintiffs were "victims of racial discrimination." Plaintiffs suffered unfair treatment that were personally directed against them although they committed no wrong.

111.    Although, CHI has overtly and repeatedly disclaimed any liabilities arising from the exclusive conducts of its franchisees, CHI is appropriately liable in this instance, because CHI knowingly furnished and published false, malicious and defamatory information to its

franchisee, the Quality Inn to use against Mr. and Mrs. Zean and consequently, brings itself into contention and liability for its action voluntarily.

112. As such, CHI is personally liable for violating its own discriminatory policy as well as for its discriminatory conducts and the conducts of its franchisee, the Quality Inn and its employees which it directed and/or ratified.

113. The discriminatory acts of CHI and its franchisee, the Quality Inn and its employees were committed with malice or with reckless indifference to Mr. and Mrs. Zean's rights.

114. CHI knowingly imitated the conduct by furnishing and publishing defamatory and malicious materials (Internet Generated Forms DEF 003 and DEF 004) that were knowingly false, fabricated and forged, that alleged Mr. and Mrs. Zean stole "pillow cases and towels" from the hotel.

115. CHI is also liable for the acts of its franchisee, the Quality Inn, because it is quite apparent that CHI exercises significant control over the actions of the Quality Inn, which includes requiring the Quality Inn to single Mr. and Mrs. Zean out because of their race and wrongfully levied their funds and frame them of the crime of theft.

116. Defendant treated Plaintiffs differently in a place of public accommodation because of race and/or their African descent and their accent. Defendant denied Mr. and Mrs. Zean the use and enjoyment of the benefits, privileges, terms and conditions that it extends to all other similarly situated guests and invitees. Defendant made up false and pretextual reasons for its treatment of Plaintiffs and their invitees because of race and/or their African descent and their accent.

117.   Defendant breached its contract with Mr. and Mrs. Zean. Defendant imposed terms and conditions on Plaintiffs' contract that are not imposed on the contracts of other similarly situated hotel guests in violation of Civil Rights Act of 1866, 42 U.S.C. § 1981(b) which provides, that to "make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and ***termination of contracts***, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

118.   Defendant denied Mr. and Mrs. Zean enjoyment of the same accommodations, privileges, and/or benefits that it grants to other similarly situated hotel guests.

119.   As a result of the Defendant's unlawful actions as described above, Plaintiffs Samuel Zean and Eunice Zean have suffered, continue to suffer, and will in the future suffer irreparable loss and injury, including but not limited to economic loss, humiliation, embarrassment, emotional distress, strain on relationships, and unlawful deprivation of their federally protected rights to exercise and enjoy equal treatment in the making and enforcing of contracts in places of public accommodation without regard for race and/or color.

120.   A false written or verbal statement that a person has committed a crime of moral turpitude (stealing items from a hotel) is libel per se and slander per se.

121.   Plaintiffs experienced humiliation, shame, mental anguish, embarrassment, and no longer have any freedom of speech to their kids in matters of not stealing.

122.   Plaintiffs were emotionally, mentally damaged and injured as a direct and proximate result of CHI' action and conduct. Plaintiff Samuel Zean experienced intense headaches

and anxiety thereafter.

123.   Here come now Plaintiffs, asking for the following relief:

## CAUSES OF ACTION
## COUNT I
### Unlawful Discrimination in Violation of 42 U.S.C. § 1981

### (On behalf of all Plaintiffs against CHI)

124.   Plaintiffs re-allege and incorporate by reference the above paragraphs, as if fully set forth herein.

125.   Plaintiffs specifically re-alleges and incorporate all the allegations of fact contained in paragraphs ¶ 6 through ¶ 121 by reference as though fully alleged herein Count I of this Complaint.

126.   By discriminating against Plaintiffs on the basis of their race and on the basis of their African descent, accent, unfair targeting and treatment in the manner set forth in this Complaint, Defendant has denied Plaintiffs the same right to enjoy the benefits, privileges, terms, and conditions of contract as is, and was, enjoyed by white citizens, in violation of Plaintiffs' rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981(a), and specifically (b).

## COUNT II

### Unlawful Public Accommodation Discrimination in Violation of the Civil Rights Act of 1964

### (On behalf of all Plaintiffs against CHI)

127.   Plaintiffs re-allege and incorporate by reference the above paragraphs, as if fully set forth herein.

128.   Plaintiffs specifically re-alleges and incorporate all the allegations of fact contained in paragraphs ¶ 6 through ¶ 121 by reference as though fully alleged herein Count II of this Complaint.

129.   By denying Plaintiffs the full and equal enjoyment of the services of a place of public accommodation on the basis of their race and basis of their African descent, accent, unfair targeting and treatment in the manner set forth in this Complaint, Defendant has violated section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5) to be brought against a defendant who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e-2 or 2000e-3), and the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the defendant.

## COUNT III

**Unlawful Public Accommodation Discrimination in Violation of Minnesota Human Rights Act, Minn. Stat. § 363.03A and Minn. Stat. § 363.02**

**(On behalf of all Plaintiffs against CHI)**

130.   Plaintiffs re-allege and incorporate by reference the above paragraphs, as if fully set forth herein.

131.   Plaintiffs specifically re-alleges and incorporate all the allegations of fact contained in paragraphs ¶ 6 through ¶ 121 by reference as though fully alleged herein Count III of this Complaint.

132.   By denying Plaintiffs the full and equal enjoyment of the services of a place of public accommodation on the basis of their race and basis of their African descent, accent, unfair targeting and treatment in the manner set forth in this Complaint, Defendant has violated Minnesota Human Rights Act, Minn. Stat. § 363.03A and Minn. Stat. § 363.02.

## COUNT IV

### Defamation by Libel

### (On behalf of all Plaintiffs against CHI International, Inc.)

133.   The allegations of fact contained in the preceding paragraphs are incorporated by reference as though fully alleged herein.

134.   Plaintiffs specifically re-alleges and incorporate all the allegations of fact contained in paragraphs ¶ 6 through ¶ 121 by reference as though fully alleged herein Count IV of this Complaint.

135.   By falsely and maliciously defaming (libeling) Plaintiffs in its furnished and published documents (DEF 003, 004) in the manner specifically set forth in this Complaint, Defendant CHI is liable to Plaintiffs for defamation under Minnesota defamation and libel law.

136.   As a result, of Defendant CHI wrongful and willful conduct, Mr. and Mrs. Zean, experienced humiliation, shame, mental anguish, embarrassment, and have found great difficulties exercising their parental freedom of speech to teach their children the moral of

not stealing.

137.   Plaintiffs are emotionally, mentally and physically damaged and injured as a direct and proximate result of CHI' action and conduct and are entitled to compensatory damages, as well as their costs and expenses.

## COUNT V

### Defamation by Slander

### (On behalf of all Plaintiffs against CHI International, Inc.)

138.   The allegations of fact contained in the preceding paragraphs are incorporated by reference as though fully alleged herein.

139.   Plaintiffs specifically re-alleges and incorporate all the allegations of fact contained in paragraphs ¶ 6 through ¶ 121 by reference as though fully alleged herein Count V of this Complaint.

140.   The Quality Inn general manager, Mr. Mark Revering, by falsely and maliciously defaming (slandering) Plaintiffs in the presence of their two sons in reliance on CHI's published material DEF 003 in the manner specifically set forth in this Complaint, Defendant CHI is liable to Plaintiffs for defamation under Minnesota defamation and libel law.

141.   As a result, of Defendant CHI wrongful and willful conduct, Mr. and Mrs. Zean, experienced humiliation, shame, mental anguish, embarrassment, and have found great difficulties exercising their parental freedom of speech to teach their children the moral of not stealing.

142.   Plaintiffs are emotionally, mentally and physically damaged and injured as a direct

and proximate result of CHI' action and conduct and are entitled to compensatory damages, as well as their costs and expenses.

## COUNT VI

### Breach of Contract Pursuant to Civil Rights Act of 1866, 42 U.S.C. § 1981(b)

### (On behalf of all Plaintiffs against CHI International, Inc.)

143. Plaintiffs re-allege and incorporate by reference the above paragraphs, as if fully set forth herein.

144. Plaintiffs specifically re-alleges and incorporate all the allegations of fact contained in paragraphs ¶ 6 through ¶ 121 by reference as though fully alleged herein Count VI of this Complaint.

145. Defendant breached its contract with Mr. and Mrs. Zean. Defendant imposed terms and conditions on Plaintiffs' contract that are not imposed on the contracts of other similarly situated hotel guests in violation of Civil Rights Act of 1866, 42 U.S.C. § 1981(b) which provides, that to "make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and *termination of contracts*, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant the following relief:

(1) Enter a declaratory judgment finding that the foregoing actions of the Defendant was defamatory and discriminatory and violate the Civil Rights Act of 1866, 42 U.S.C. §1981, the Civil Rights Act of 1964, Minnesota Human Rights Act, Minn.

Stat. § 363.03A and Minn. Stat. § 363.02.

(2) Award compensatory damages to Plaintiffs in an amount to be determined by a

jury that would fully compensate Plaintiffs for economic loss, humiliation,

embarrassment and emotional distress;

(3) Order such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues so

triable as of right.

Date: February 5, 2019                Respectfully Submitted,

s/ Samuel Zean,
Samuel Zean, (Self-represented litigant)
8708 62nd Ave. North
Brooklyn Park, MN
(651) 528-1594
samuelzean@hotmail.com

s/ Euince Zean,
Eunice Zean, (Self-represented litigant)
8708 62nd Ave. North
Brooklyn Park, MN
(651) 757-5383
eunicezean84@hotmail.com
**PLAINTIFF FOR THEMSELVES**